**THE LONG LAW FIRM, PLLC**
James Austin Long (CSB No. 326404)
1401 21st Street, Ste. 5801
Sacramento, CA 95811
Tel:    315-991-8000
jlong@long.law

**WITTELS MCINTURFF PALIKOVIC**
Daniel Kieselstein* (NYB No. 5701156)
305 Broadway, 7th Floor
New York, New York 10007
Tel:    914-775-8862
djk@wittelslaw.com
*Attorneys for Plaintiffs*

*\*Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JANET JONES and EDIE WEISS,** On Behalf of Themselves and All Others Similarly Situated, | Case No.: |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| **v.** | **JURY TRIAL DEMANDED** |
| **MINDVALLEY INC.,** | |
| **Defendant.** | |

Plaintiffs Janet Jones ("Ms. Jones") and Edie Weiss ("Ms. Weiss" and, with Ms. Jones, "Plaintiffs"), by their undersigned attorneys, The Long Law Firm, PLLC, and Wittels McInturff Palikovic, bring this consumer protection action in their individual capacities and on behalf of a class of consumers defined below against Defendant Mindvalley Inc. (hereafter, "Defendant" or "Mindvalley") and hereby allege the following with knowledge as to their own acts and upon information and belief as to all other acts:

## INTRODUCTION

1.     This is a proposed class action lawsuit challenging Mindvalley's use of deceptive and illegal "automatic renewal" tactics to trick consumers into paying for unwanted, pricey subscriptions for wellness and self-help programs. Mindvalley intentionally misleads consumers into thinking that a subscription to a Mindvalley offering lasts only for a discrete period. The truth, however, is that Mindvalley hides "disclosures" that its subscription instead automatically renews. Mindvalley hides the truth both before and after consumers purchase a subscription and any disclosures it provides fall far short of the minimum standard required by law for companies that offer subscriptions. Mindvalley then intentionally makes its subscriptions difficult to cancel. Mindvalley also misleads consumers regarding its "risk-free" refund guarantee.

2.     Mindvalley offers a suite of online products and services that purport to help consumers achieve personal growth. Mindvalley calls itself "the world's most effective transformation platform" and promises "a better you every day."

3.     As more and more commerce is conducted online, many firms boost profits by enrolling customers into automatically renewing subscriptions.

4.     Knowing that "[b]ecause subscriptions are automatically renewed, consumers who are inertial or not fully attentive may continue to pay for services they no longer value[,]"[1] some companies use unlawful practices, such as "risk-free" trials that are hard to cancel and then convert into paid

---

[1] Liran Einav, Benjamin Klopack & Neale Mahoney, *Selling Subscriptions*, Nat'l Bureau of Econ. Research (NBER), Working Paper No. 31547 (Aug. 2023), https://www.nber.org/papers/w31547.

subscriptions, inadequate disclosure of recurring charges, cancellation policies, and other deceptive tactics—to lure customers into paying for subscriptions they do not actually want.

5.      To protect consumers from deceptive autorenewal practices, California enacted its automatic renewal law to address such practices, including those of Defendant. *See* Cal. Bus. & Prof. Code §§ 17600–06 (the "ARL"). The ARL requires companies employing automatic renewal payment mechanisms to provide "clear and conspicuous" disclosures about the autorenewal plan, obtain consumers' "affirmative consent" to autorenewal, provide a "cost-effective, timely, and easy-to-use mechanism" for canceling the subscription, and notify customers that their subscription will renew 15 to 45 days before it does.

6.      The ARL is enforced through, *inter alia*, the False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. The FAL renders unlawful any untrue or misleading statement made in advertising a good or service—such as misstating the price, fact of autorenewal, renewal terms, or cancellation policy—when the advertiser knows, or should know, that the statement is untrue or misleading. *See id.*

7.      Mindvalley engages in numerous deceptive tactics barred by the FAL, ARL, and other California statutes in at least five ways.

8.      ***First***, Mindvalley advertises a "100% risk-free" 15-day trial that consumers can "[c]ancel within 15 days, one-click." In reality, Mindvalley denies refunds to consumers who cancel within fifteen days unless they separately "initiate a refund[,]" which requires consumers to navigate a confusing, nine-step process to do so.

9.      ***Second***, Mindvalley does not clearly and conspicuously disclose the automatically renewing nature of its subscriptions, or obtain the affirmative consent of consumers, prior to enrolling consumers in its automatically renewing subscriptions.

10.     ***Third***, Mindvalley makes canceling exceedingly difficult and requires consumers to navigate—with no help from Mindvalley—a lengthy and confusing process of at least nine steps across at least five screens. This process obstructs efforts by consumers to cancel their subscriptions and leads to large numbers of unwanted automatic renewals.

11.     **Fourth**, Mindvalley does not provide a post-purchase acknowledgment email including "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner capable of being retained by the consumer."

12.     **Fifth**, Mindvalley either does not provide customers notice of upcoming renewals, or does not provide a renewal notice that includes that the automatic renewal or continuous service will automatically renew unless the consumer cancels, the length and any additional terms of the renewal period, the amount the consumer will be charged, one or more methods by which a consumer can cancel the automatic renewal, or a link or otherwise reasonably accessible electronic method that directs the consumer to the cancellation process.

13.     All Mindvalley customers face this same gauntlet and need only be tricked by one of Mindvalley's traps to end up paying a hefty fee for an illegal subscription.

14.     It is not happenstance that so many of Mindvalley's customers are paying for illegal subscriptions. This outcome is the desired result of Mindvalley's intentional and bad-faith design choices. Mindvalley knows its scheme is tricking customers as hundreds of consumers have complained directly to Mindvalley or via sites like Trustpilot, SiteJabber, and Reddit. Upon information and belief, Mindvalley experiences a high rate of chargebacks from consumers disputing unwanted charges caused by Mindvalley's subscription scheme, and it has developed customer service protocols specifically to deal with these complaints.

15.     Despite the clear messages Mindvalley's customers are sending, Defendant continues to subject consumers to its unlawful subscription scheme and to reap significant monetary benefits from its misconduct.

16.     Only through a class action can consumers like Plaintiffs remedy Mindvalley's unlawful practices. Because the monetary damages suffered by each customer are small in comparison to the much higher cost a single customer would incur in trying to challenge Mindvalley's improper conduct, it makes no financial sense for an individual customer to bring his or her own lawsuit. Furthermore, many customers do not realize they are victims of Mindvalley's unlawful acts and continue to be charged to this day. With this class action, Plaintiffs and the Class seek to level the playing field, enjoin

CLASS ACTION COMPLAINT

Mindvalley's unlawful business practices, and recover the charges Mindvalley has imposed on them in violation of the law.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Mindvalley because Mindvalley conducts substantial business in California, has sufficient minimum contacts with California, and otherwise purposely avails itself of the privileges of conducting business in California by registering as an out-of-state corporation in California, by maintaining an office in California, and by marketing and selling products and services in California. For example, from May 17–18, 2025, Mindvalley held a "Manifesting Summit" in Los Angeles, California, for which it sold tickets on the Mindvalley website.[2] From February 29 to March 1, 2020, Mindvalley held another 2-day summit, Mindvalley Live LA, in Los Angeles, California, for which it also sold tickets on the Mindvalley website. Mindvalley's advertising also specifically targeted California consumers. In emails advertising its remote seminars, Mindvalley repeatedly displayed the time they would take place in just two time zones: Los Angeles and London. This included seminars in January 2024 ("Life Blueprint"); December 2023 ("Make 2024 the Best Year of Your Life"); September 2023 ("How to Scale Your Business to $10M, $50M, or Even $100M in Revenue"); August 2023 (twice, for "The Paul McKenna Experience" and "AI for CEOs, Entrepreneurs, and Executives"); June 2023 ("Create Your Life Manifesto"). Further, the injuries to California consumers that Plaintiffs seek to prevent through public injunctive relief arise directly from Mindvalley's continuing conduct in California, including, but not limited to, directing its subscription practices at California consumers.

18.     This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Mindvalley.

19.     This Court has original subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act. However, if the Court determines that it lacks original jurisdiction over

---

[2] https://www.mindvalley.com/summit/manifesting.

any claim in this action, it may exercise supplemental jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

20.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiffs reside in this District, and Mindvalley resides in this District for venue purposes. *See* 28 U.S.C. § 1391(c)(2).

21.    Divisional Assignment. Assignment to the San Jose Division is proper under Civil L.R. 3-2(c) and (e) because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in the counties served by the San Jose Division. Both named Plaintiffs and proposed Class representatives, as well as hundreds of Class members, purchased Mindvalley's services in the counties served by this Division. Moreover, Mindvalley conducts substantial business in the counties served by this Division, has marketed, advertised, sold, and provided services in those counties, and has caused harm to Class members residing in those counties.

## PARTIES

22.    Plaintiff Janet Jones is a citizen of California living in San Jose, California. She was enrolled in a Mindvalley subscription on or around May 29, 2021, and again on or around October 26, 2021.

23.    Plaintiff Edie Weiss is a citizen of California living in Santa Cruz, California. She signed up for a Mindvalley free trial on or around May 9, 2025, and was enrolled in a Mindvalley subscription on or around May 24, 2025.

24.    Defendant Mindvalley Inc. is a Delaware corporation with its principal place of business in Kuala Lumpur, Malaysia, and an office at 7302 Royal Oaks Ct., Pleasanton, CA 94566. Mindvalley offers online courses in a variety of areas loosely centered on wellness and personal growth. Representative courses include:

- The "Silva Ultramind System," taught by Mindvalley's Founder and CEO, Vishen Lakhiani, who promises consumers will "[l]earn to naturally access alpha, theta, and delta brainwave states to channel your mind's full creative potential";[3]

- "The Art of Manifesting," which promises "breakthroughs" such as "being able to create visions so clear and powerful, they become inevitable," and "[k]nowing how to bend the fabric of time and space to your desires";[4] and

- "Quantum Jumping," which claims to teach consumers to "enter the alpha level of mind: where you visualize yourself soaring through the multiverse, and meeting alternate versions of you" and "traveling through time, and meeting yourself in past lives."[5]

## FACTUAL ALLEGATIONS

### A.    Background on the Subscription e-Commerce Industry.

25.    The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[6] The sector "has exploded in recent years, by one estimate growing by over 400% over the past decade," such that "subscription revenue is expected to reach $1.5 trillion" in 2025.[7]

26.    Though it provides convenience to some consumers, there are well-documented downsides associated with the subscription-based business model. In particular, retailers may realize far more profit by locking consumers into recurring subscriptions than by working to improve their products or focusing only on charging consumers for products they actually want. One paper "estimates that inattention and more passive renewal lead to a substantial increase in revenues for subscription services, which could be as high as ***three times greater*** than the revenues they would receive if subscribers were fully attentive and made an active renewal decision each month."[8]

---

[3] https://home.mindvalley.com/quests/en/ultramind.

[4] https://home.mindvalley.com/quests/en/manifesting.

[5] https://home.mindvalley.com/quests/en/quantum.

[6] *See* Sam Saltis, *How to Run an eCommerce Subscription Service: The Ultimate Guide*, CORE DNA, https://www.coredna.com/blogs/ecommerce-subscription-services.

[7] Emily Stewart, *Companies Love Trapping People in Subscriptions. Savvy Consumers Are Fighting Back.*, Business Insider (July 24, 2025), https://www.businessinsider.com/free-trials-consumers-subscription-economy-2025-7.

[8] *See* Einav et al., *supra* note 1, at 17.

27.    Recognizing the profitability of recurring subscriptions, many companies utilize deceptive sign-up processes designed to lure consumers into enrollment, and misleading cancellation processes designed to prevent them from canceling or, as here, securing refunds. As one recent report observed, "[c]ompanies have gotten increasingly savvy at trapping consumers in what are known as 'dark patterns,' drawing them in with a shiny new product or discounted subscription that ends up being burdensome to get out of."[9]

28.    The term "dark patterns," first coined in 2010 by the cognitive scientist Harry Brignull, is a term of art in user-experience ("UX") design, referring to interface strategies intentionally crafted to manipulate consumer choice. The Federal Trade Commission defines them as "practices that trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[10] A report by Nielsen Norman Group, a globally-recognized UX consultancy, defines a dark pattern as "a design pattern that prompts the user to take an action that benefits the company employing the pattern by deceiving, misdirecting, shaming, or obstructing the user's ability to make another (less profitable) choice."[11]

29.    The image on the following page provides examples of commonly employed dark patterns:[12]

---

[9] Ayelet Sheffey**,** *America's Nightmare of Never-Ending Subscriptions*, Business Insider (Oct. 19, 2024), https://www.businessinsider.com/america-subscriptions-nightmare-recurring-payments-cancellation-company-tricks-trap-customers-2024-10?utm_source=chatgpt.com

[10] Fed. Trade Comm'n, *Shedding Light on Dark Patterns: An FTC Report on How Manipulative Design Is Used Against Consumers*, at 1 (Sept. 14, 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800+Dark+Patterns+Report+9.14.2022+-+FINAL.pdf

[11] Maria Rosala**,** *Deceptive Patterns in UX: How to Recognize and Avoid Them*, Nielsen Norman Group (Dec. 1, 2023), https://www.nngroup.com/articles/deceptive-patterns/

[12] Sarbashish Basu, *What is a dark pattern?  How it benefits businesses- Some examples*, H2S MEDIA (Dec. 19, 2019), https://www.how2shout.com/technology/what-is-a-dark-pattern-how-it-benefit-businesses-with-some-examples.html.



30.     As the FTC explains, "dark patterns often take advantage of consumers' cognitive biases to steer their conduct or delay access to information needed to make fully informed decisions."[13] The image on the following page provides examples of cognitive biases, including some that Mindvalley exploits in its enrollment and cancellation processes:

---

[13] FTC, *Shedding Light on Dark Patterns*, *supra* note 9, at 2.

CLASS ACTION COMPLAINT



31.     As the subscription industry has grown, so too has the use of dark patterns. According to the FTC:

> For decades, unscrupulous direct mail marketers and brick-and-mortar retailers have relied on design tricks and psychological tactics . . . to get consumers to part with their money or data. As more and more commerce has moved online, so too have these manipulative design practices—termed 'dark patterns'—only grown in scale and sophistication, creating ever greater challenges for consumers.[14]

32.     Mindvalley has engaged in these unlawful subscription practices with great success. Publicly available evidence suggests Mindvalley generates $150 million in annual revenue, with a "40%

---

[14] FTC, *Shedding Light on Dark Patterns*, *supra* note 9, at 17.

annual growth rate."[15] Mindvalley advertises a "community of more than 10 million people (and expanding)[.]"[16]

**B.    California's False Advertising Law (Cal. Bus. & Prof. Code § 17500) and Automatic Renewal Law (Cal. Bus. & Prof. Code § 17600).**

33.    California law provides a safeguard against these unscrupulous practices: the FAL and, through the FAL, the ARL. Together, these laws impose strict disclosure, consent, cancellation, and transparency requirements to protect consumers from unwanted subscription charges. *See* Cal. Bus. & Prof. Code § 17600 ("It is the intent of the Legislature to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent[.]"); *see also Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) ("We have also recognized that [the FAL] prohibit[s] not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (citation omitted).

34.    Under the FAL, "[i]t is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, in any . . . publication . . . or in any other manner or means whatever, including over the internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500; *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016) ("The FAL prohibits unfair, deceptive, untrue, or misleading advertising[.]").

---

[15] https://stripe.com/en-mx/customers/mindvalley.

[16] https://careers.mindvalley.com/manifesto.

35.    Under the ARL, a company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1).

36.    The specific "automatic renewal offer terms" and "continuous service offer terms" that must be clearly and conspicuously disclosed are defined by the statute. Those disclosures include that: (1) the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (4) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (5) the minimum purchase obligation, if any. *Id.* § 17601(a)(2)(A)–(E).

37.    "Clear and conspicuous" is likewise defined by the ARL. It means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* § 17601(a)(3).

38.    In addition to making these required disclosures, the company must "obtain the consumer's express affirmative consent to the automatic renewal or continuous service offer terms." Failure to do so is "unlawful." *Id.* § 17602(a)(4).

39.    Also, as of July 1, 2025, the company may not "[m]isrepresent, expressly or by implication, any material fact related to the transaction, including, but not limited to, the inclusion of an automatic renewal or continuous service." *Id.* § 17602(a)(7).

40.    After the transaction, and in addition to the pre-purchase obligations detailed above, the company must comply with the ARL's post-purchase acknowledgment requirements. Specifically, the company must "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." *Id.* § 17602(a)(3). For transactions involving a free

trial, the acknowledgement must further disclose "how to cancel." *Id.* The cancellation mechanism described in the acknowledgment must be one of "a toll-free telephone number, email address, a postal address if the seller directly bills the consumer, or . . . another cost-effective, timely, and easy-to-use mechanism for cancellation." *Id.* § 17602(c)(1).

**C.    Mindvalley's Enrollment Process Violates the ARL.**

41.    Mindvalley has unique access to its historical enrollment pages. At all relevant times, Mindvalley funnels users to a universal payment page through two materially identical enrollment flows: one for users subscribing to a general membership, and one subscribing to a membership through a specific course.

42.    The two flows, which lead the user to the same, ARL non-compliant payment page, do not differ materially in the substance of the disclosures they provide to prospective consumers or their failure to provide the information necessary to obtain affirmative consent from the consumer.

**1.    General Membership Enrollment Flow**

43.    On navigating to mindvalley.com, users are immediately solicited for membership, with the promise of "[a] better you every day" and a prominently displayed offer to "Become a member," as shown on the following page:

44.    Clicking the "Become a member" button directs the user to Mindvalley's general membership enrollment page (the "General Enrollment Page"). On arriving, the user is presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the user to "Become a member":

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16      45.     Clicking on this button does not navigate to another web page. Instead, the button is a

17  "jump link" designed to immediately propel the consumer to a purchase solicitation at the bottom of the

18  same web page. This "jump link," which scrolls down the web page in less than one second, bypasses

19  all intervening information and, by design, deprives the user of a chance to review the page's full

20  content. This tactic obscures material information and pushes the user toward an immediate transaction.

21  Below is a reproduction of what consumers see after clicking the "Become a member" button:[17]

22
23
24
25
26
27

_____

[17] This rapid scroll down to the enrollment link bypasses all content located between the top of the page
28  and the payment link. This additional content is intentionally hidden from the user.

CLASS ACTION COMPLAINT



46.     Mindvalley unlawfully misrepresents its refund policy as "100% Risk-Free: Cancel within 15 days, one-click." This representation is untrue for at least two reasons. **First**, Mindvalley customers seeking a refund must not only cancel, but must also affirmatively request a refund. **Second**, as will be shown below, affirmatively requesting that refund is not a matter of "one-click," but a lengthy process requiring the consumer to navigate numerous windows and dark patterns. Mindvalley's description of its refund policy is an untrue and misleading statement concerning a matter of fact connected with the sale of Mindvalley's subscriptions which Mindvalley knows or should reasonably know is untrue and misleading. It therefore violates the FAL. Cal. Bus. & Prof. Code § 17500.

47.     Mindvalley's solicitation does not disclose **any** of the automatic renewal offer terms companies are required to disclose under the ARL. It does not disclose that the subscription will automatically renew until canceled, Cal. Bus. & Prof. Code § 17601(a)(2)(A), explain how a consumer can cancel, *id.* (a)(2)(B), make clear that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period), *id.* (a)(2)(C), or state the length of the autorenewal term (or that it will be continuous), *id.* (a)(2)(D). Based on the terms shown, a reasonable consumer would understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term.

48.     Worse, what little information Mindvalley does provide is presented deceptively. Though it offers both "Monthly" and "Yearly" plans, Mindvalley pre-selects a one-year term to lock in a longer user commitment at a higher price, and employs dark patterns to take advantage of consumer inertia to have consumers default to the yearly plan (*e.g.*, highlighting the 1-year option in bright purple against the plain black-and-white of the monthly option, deploying a bright green box to advertise the "savings" of the 1-year option, placing both "yearly" and "monthly" in vanishingly small text obscured by attractive slogans and a brightly colored invitation to enroll). Mindvalley also does not contain a link to its terms and conditions, depriving the user of an easily accessible means of learning more about Mindvalley's offers.

49.     Mindvalley's solicitation banner fails to obtain the consumer's affirmative consent. Its misrepresentation of a "100% risk-free" cancellation policy (*supra* ¶ 46), its omission of the automatic renewal offer terms required by the ARL (*supra* ¶ 47), and its use of deceptive dark-pattern design to steer consumers into the pre-selected year-long plan (*supra* ¶ 48) all operate to mislead prospective consumers and prevent Mindvalley from obtaining affirmative consent as required under the ARL.

50.     When users click on the "Join Membership" button, they are taken to the Mindvalley payment page, described in greater detail below. *See infra* at section D.

## 2.  Course-Specific Enrollment Flow

51.     The course-specific enrollment flow does not materially differ from the general enrollment flow described above. Nor does this enrollment flow vary materially across different courses. Like the general enrollment flow, it fails to obtain affirmative consent from consumers.

52.     The layout of the course-specific enrollment page (the "Course-Specific Enrollment Page") is materially identical to the General Enrollment Page. On arriving, the user is similarly presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the user to "Join the program":

CLASS ACTION COMPLAINT



53. Mindvalley then deploys the same "jump link" tactic it uses on its General Enrollment Page. Here, too, clicking on the "Join the program" button does not take the user to a separate page. Instead, the button is another "jump link," which propels the user directly to a purchase solicitation near the bottom of the same page. As on the General Enrollment Page, this jump occurs almost instantaneously, skipping all intervening content. By collapsing the page in this way, Mindvalley deprives consumers of an opportunity to review the page's content before being funneled into a purchase decision.

54. The first section the user lands on, reproduced on the following page, features a large promotional banner styled as an invitation to purchase a Mindvalley membership. This banner omits all automatic renewal offer terms. Instead, users are instructed to "[b]ecome a Mindvalley member now, and begin your transformational journey":

17



55.    Directly beneath this banner is the purchase solicitation, which is reproduced on the following page:



56.     The Course-Specific Enrollment Page's purchase solicitation does not materially differ from the purchase solicitation on the General Enrollment Page.

57.     ***First***, the Course-Specific Enrollment Page's purchase solicitation promises, word-for-word, the same benefits of membership, including the exact same misrepresentation of the Mindvalley refund policy: "100% Risk-Free: Cancel within 15 days, one-click." On the following page are the representations from the General Enrollment Page (on the left) and the Course-Specific Enrollment Page (on the right):

58. Mindvalley's actual refund policy—requiring the user to both cancel *and* affirmatively request a refund—does not vary based on whether the user enrolled through the General Enrollment Page or the Course-Specific Enrollment Page. Mindvalley's identical misrepresentations are thus both untrue for the same reasons and violate the FAL in the same way. *See* Cal. Bus. & Prof. Code § 17500.

59. **Second**, as on the General Enrollment Page, the solicitation banner on the Course-Specific Enrollment Page does not include **any** of the automatic renewal offer terms companies are required to disclose under the ARL, depriving consumers of the information they would need to provide affirmative consent. Mindvalley does not disclose that the subscription will automatically renew until canceled, Cal. Bus. & Prof. Code § 17601(a)(2)(A), explain how a consumer can cancel, *id.* (a)(2)(B), explain that recurring charges will be imposed automatically (instead of, for example, through consumer opt-in at the end of the payment period), *id.* (a)(2)(C), or state the length of the autorenewal term (or that it will be continuous), *id.* (a)(2)(D).

60. As with the General Enrollment Page, a reasonable consumer reviewing Mindvalley's purchase solicitation would thus understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter what option the user selects, at the end of the specified term, Mindvalley will automatically re-enroll the user for an additional subscription term.

61. **Third**, Mindvalley again pre-selects the "membership yearly" for the user and again employs deceptive dark patterns (highlighting the yearly membership in bright orange, as opposed to the dull gray of the monthly membership, and presenting the yearly option in a larger box). Here, too, no link to Mindvalley's Terms and Conditions is provided.

62. Mindvalley's Course-Specific purchase solicitation banner fails to obtain the consumer's affirmative consent for exactly the same reasons as the General Enrollment Page's solicitation banner.

Both misrepresent Mindvalley's cancellation policy as "100% risk-free . . . one-click" (*see supra* ¶¶ 46, 57),  omit the automatic renewal offer terms required by the ARL (*see supra* ¶¶ 47, 59), and use deceptive dark-pattern tactics to steer consumers into the pre-selected year-long plan (*see supra* ¶¶ 48, 61), all in service of manipulating consumers into taking the course of action most profitable to Mindvalley, rather than obtaining consumers' affirmative consent.

63.     As on the General Enrollment Page, users are then presented with a "Join membership" button, which directs them to Mindvalley's payment page, which is used for both general enrollment and course-specific consumers (the "Payment Page").

**D.      Mindvalley's Payment Page Violates the FAL and ARL.**

64.     Mindvalley's Payment Page—which is the same for all prospective Mindvalley members—is reproduced below:



CLASS ACTION COMPLAINT

65.     This payment page violates the FAL and ARL in multiple ways. Once again, Mindvalley misrepresents its refund policy. Under the heading "Refund / Cancellation policy," Mindvalley reassures the user to "Feel safe. 15 days for a Full refund[.]" This is misleading in two ways. ***First***, Mindvalley's heading conflates "Refund" and "Cancellation" in a manner misleading to a reasonable consumer, who would naturally understand based on this language that cancellation within fifteen days would trigger the refund of their membership fee. ***Second***, Mindvalley's promise of "15 days for a Full refund" under a heading containing the words "Cancellation policy" is deceptive, because canceling within 15 days will not, in fact, trigger a refund. Mindvalley's misleading statements violate the FAL. *See* Cal. Bus. & Prof. Code § 17500.

66.     Mindvalley's automatic renewal offer terms are also not presented "clearly and conspicuously." They are hidden at the bottom corner of the page, in very small, gray text in low contrast to a white background. The eye is instead drawn away from the disclosure, towards the brightly colored "Subscribe" button. As with Mindvalley's enrollment page, the payment page's design *deemphasizes* the notice text, rather than making it ***conspicuous***. Mindvalley's "disclosure" is thus not "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(a)(3). Again, Mindvalley is using the "deliberate misdirection" dark pattern to prevent its consumers from making an informed choice. Mindvalley's intentional design choices violate the ARL. *See id.* § 17602(a)(1) (requiring companies to "present the automatic renewal offer terms in a clear and conspicuous manner.").

67.     Even if Mindvalley's disclosure was clear and conspicuous (it is not), it omits the automatic renewal offer terms Mindvalley is required to disclose. First, Mindvalley never states that "the subscription or purchasing agreement will continue until the consumer cancels." Cal. Bus. & Prof. Code § 17601(a)(2)(A). Second, Mindvalley says "[c]ancel anytime" but does not provide any description of how to effect cancellation. *Id.* § 17601(a)(2)(B). Third, Mindvalley does not state "the recurring charges that will be charged to the consumer[]," instead stating only that the membership will renew "at the current rate"—a number not disclosed anywhere on the Payment Page. *Id.* § 17601(a)(2)(C). Fourth, Mindvalley omits "the length of the automatic renewal term," stating only that

renewal will take place "each billing period" and "at each renewal, per your plan's terms." Because Mindvalley pre-selects a one-year renewal period, *see supra* ¶¶ 48, 61, rather than prompt users to select the length of the term, this omission violates the ARL. *Id.* § 17602(a). The only reference to the length of the billing period is the word "yearly," written in small, low-contrast font and placed at the opposite corner of the screen—design choices that result in the period being neither clear and conspicuous nor in visual proximity to the request for consent. *Id.* § 17601(a)(1) (requiring automatic renewal terms to be placed "in visual proximity . . . to the request for consent to the offer").

68. Mindvalley also does not obtain affirmative consent for its automatic charges, as required by the ARL. It does not require the user to affirmatively check a checkbox agreeing to its terms. By design, a consumer can complete the entire enrollment flow without ever receiving the full automatic renewal offer terms or an accurate description of Mindvalley's refund and cancellation policy. Nor does Mindvalley include in its (small, inadequate, difficult to read) disclosure any statement that clicking "Subscribe" constitutes an agreement to Mindvalley's Terms & Conditions.

69. Mindvalley also does not provide any clear, conspicuous link to those Terms & Conditions, and the link it does provide is not in visual proximity to the "Subscribe" button. Instead, the link is placed on the bottom left corner of the enrollment page (the opposite side of the page from the Subscribe button), in small type and light gray font in low contrast with the white background. It is not underlined or in any way designed to draw the attention of the user—even the title of the link ("Terms" rather than "Terms & Conditions") is designed to be as small and inconspicuous as possible. A reproduction of the Payment Page demonstrating the placement of the "Terms" link is shown on the following page:

70.     As shown, a prospective Mindvalley member can, by design, complete the entire enrollment process without ever seeing a disclosure of the automatic renewal offer terms or an accurate representation of Mindvalley's refund policy. Through these strategic omissions and its extensive use of deceptive, "dark pattern" designs, Mindvalley manipulates consumer behavior to maximize profit, rather than obtain affirmative consent to provide consumers an informed choice, as required under the ARL.

71.     Mindvalley's enrollment flow thus violates the FAL and ARL.

**E.     Mindvalley's Post-Purchase Acknowledgment Email Violates the ARL.**

72.     After a customer signs up for a Mindvalley membership, Mindvalley sends them an email with the subject line "Welcome to Mindvalley." An exemplar is shown on the following page:

24



73.    Mindvalley's post-enrollment acknowledgment email does not meet the ARL's post-purchase requirements. It does not include the automatic renewal offer terms or continuous offer terms, describe the cancellation policy or "how to cancel," much less an easy-to-use mechanism for canceling. *See* Cal. Bus. & Prof. Code § 17602(a)(3). Neither Plaintiff received a post-enrollment acknowledgment email containing this information as required under the ARL. *See id.*

74.    Further, the "Unsubscribe" link in the above email does not direct the user to a page to cancel their subscription, but instead directs the user to a page to manage the frequency of emails they receive from Mindvalley.

**F.**    **Mindvalley's Refund Process Is Deceptive.**

75.    Mindvalley repeatedly represents its 15-day "risk-free" trial process as permitting users to obtain a refund by "cancel[ing] within 15 days, one-click." This representation is untrue and misleading.

76.    As noted above, Mindvalley's enrollment flow begins with a brightly colored, centrally placed button inviting the user to "Become a member" or "Join the program" and which, when clicked, propels the user to a purchase solicitation near the bottom of the page. This "jump link[,]" which scrolls down the web page in less than one second, bypasses all intervening information. In other words, the consumer is, by design, not given the chance to review the page's full content, but instead steered directly to the purchase solicitation. *See supra* at 45 (General Enrollment Page); 53 (Course-Specific Enrollment Page).

77.    Among the content hidden from the user through Mindvalley's use of the "jump link" tactic is the below description of its 15-day cancellation policy:



### Try it for 15 days risk free

Remember you don't have to say YES right now. You only have to say MAYBE. Go through the materials for 15 days risk-free from the day of purchase.

You can refund yourself anytime with one click. No emails, no phone calls, no hassle. Just reach out through our Refund Page and get a full, friendly and fast refund. No questions asked.

78.    To find this hidden explanation of Mindvalley's refund policy, the user would have to know to scroll back up from the purchase solicitation, as shown on the following page (General Enrollment flow on the left, Course-Specific Enrollment flow on the right):




79.     This intentionally hidden explanation also misrepresents Mindvalley's refund policy, which it describes as permitting a refund "with one click." As described in detail below, a Mindvalley user seeking a refund must navigate a series of at least five separate windows and nine clicks to secure their refund, and must take care not to just "cancel" their account—a misstep for which Mindvalley will refuse to refund the consumer's money. Mindvalley's misrepresentations violate the FAL's prohibition on untrue or misleading facts related to the sale of a good or service, including subscriptions that automatically renew. *See* Cal. Bus. & Prof. Code § 17500.

80.     Within this hidden "disclosure" is a link to Mindvalley's "Refund Page," which is reproduced on the following page:



81.    Even if a consumer finds this hidden refund page, its content is deceptive in multiple ways. ***First,*** Mindvalley repeats its misrepresentation that "It's One Click to Refund Your Mindvalley Program within 15 Days of Purchase." As described in detail below, securing a refund is a ***nine-click*** process. The page itself contains no single-click refund option that shortcuts the process.

82.    On the contrary, the "Go to My Account" button does not even take the user to their account dashboard—it returns the user to the Mindvalley homepage, from which they must commence the nine-step refund process.

83.    ***Second,*** the instructions Mindvalley provides are incomplete and misleading. Mindvalley states that "STEP 3" to obtain a refund requires only that the user "click the Refund link next to the program to Issue a refund.":



84.    Any reasonable consumer would thus believe that, by clicking the "Refund link," they would have secured a refund. In truth, after clicking the "Refund link," the user still needs to complete ***four additional steps*** to effectuate a refund. Just clicking the Refund link would thus result in the user being deprived of their refund, contrary to Mindvalley's deceptive misrepresentation.

85.    ***Third***, this page does not correspond to Mindvalley's website. For example, contrary to "STEP 2" on the Refund Page, Mindvalley's account page does not have a "Billing" option—just a button for "Billing & Subscriptions." Nor does Mindvalley's screenshot of the menu that expands from hovering (not clicking) on a user's Profile Icon correctly depict the menu on their website.

86.    Mindvalley's Refund Page is inaccurate, incomplete, and deliberately hidden from the consumer through the "jump link" tactic detailed above.

87.     To obtain a refund, consumers must first navigate to Mindvalley's home page and log into their account. The home page is reproduced below: Then, the consumer must (1) hover their mouse above a tiny, unlabeled icon on the top right of the home page, as reproduced below and marked with a red arrow for clarity:



88.     From there, the user must (2) select "Account" from the pop-up menu that appears below the icon. That menu is reproduced on the following page:

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    89.    Once the user has reached their account page, they must (3) select "Billing &

16 Subscriptions" from a list of seven options:

17
18
19
20
21
22
23
24
25
26
27
28



90.    The default view of the "Billing & Subscriptions" page, reproduced on the following page, contains no mention of a cancellation or refund, and provides no guidance to the user to secure either. A bold-faced header at the bottom of the page, instead invites users to "explore other products."



91.    The user must (4) click on "Subscription Settings," under the Active Subscriptions box. When clicked, the box expands, presenting two options, "Request Refund" and "Cancel Subscription":



92.     Here, Mindvalley lays a trap for the refund-seeking user. Despite repeatedly treating its refund and cancellation process as unified and promising a refund to users who "Cancel within 15 days," users who click on the "Cancel Subscription" button are directed to a cancellation flow which, if effectuated, *will not result in a refund*. At no point in this cancellation flow does Mindvalley disclose that cancellation alone will not result in a refund.

93.     At this point, the user may undertake one of two processes to secure a refund, neither of which is clearly available to the consumer or easy-to-use.

94.     If the user avoids the "Cancel Subscription" trap laid by Mindvalley, the user must (5) click the "Request Refund" button after expanding the "Subscription Settings" box:



95.     Clicking on this link takes the user to Mindvalley's "Refund & Cancel" page. On this page, although the "Refund & Cancel" box is pre-checked, Mindvalley still seeks to nudge the user into just canceling their subscription (and thus forfeiting their refund) by placing the "Cancel Subscription" box above the Refund & Cancel box, extolling the benefits of just canceling with bright green checkmarks (as opposed to the foreboding red X's in the Refund & Cancel box), and imploring the user that "[Y]ou have an alternative!"—an alternative which Mindvalley does not disclose would deny the user their refund:

96.     The user must then (6) click "Refund & Cancel," but doing so still does not trigger a refund. Instead, the user is presented with a pop-up that itself requires two additional "clicks" – the user must (7) "Tell [Mindvalley] Why You're Leaving" and (8) check a box confirming that they understand that canceling will deprive them of access to "premium features and my progress after my current billing period ends." Until the user completes both of these tasks, the Cancel Subscription button is grayed-out, inactive, and unusable, while a "Nevermind, I'm Staying"[18] button is active, and highlighted to draw the user's attention. This pop-up is reproduced on the following page.

---

[18] Clicking on the "Nevermind, I'm Staying" button returns the user to the "Billing & Subscriptions" page, forcing the user to repeat over half the process if they wish to cancel.



97.     Only once the user has given Mindvalley their reason for seeking a refund and checked the required checkbox is the "Refund & Cancel" button activated. If the user (9) clicks the "Refund & Cancel" button, they will have finally initiated a refund.

98.     As noted above, Mindvalley provides one other route to a refund: a minuscule link near the bottom of the "Billing & Subscriptions" page with the word "Refund." This link is not visible on arrival at the "Billing & Subscriptions" page—the user must scroll down to find it, past a brightly colored banner ad offering additional Mindvalley programming:





99.    If the user locates and (5) clicks the "Refund" link, they are taken to the Refund & Cancel page, where they must (6) click "Refund & Cancel"; (7) provide a reason for cancellation; (8) click a checkbox affirming their understanding of the effects of cancellation, and (9) click "Refund & Cancel" a second time.

100.    Mindvalley's nine-step process to secure a refund is specifically and intentionally designed to thwart refund requests—a "roach motel" dark pattern—that prevents customers from finding and securing a refund. Mindvalley's representations regarding its refund process violate the FAL because they are not, as represented, executable with "one-click," as Mindvalley repeatedly misrepresents to the consumer during the enrollment process.

**G.    Mindvalley's Cancellation Process Violates the ARL.**

101.    Mindvalley's cancellation process requires the same first four steps as obtaining a refund. *See supra* ¶¶ 87–91 (describing how users must find and then login to their account, click on their Billing & Subscriptions link, and expand the Subscription Settings box).

102.    The user must then (5) click on "Cancel Subscription," which takes them to another page which pushes users to "[s]tay now and keep your exclusive rate" and invites them, through a highlighted button, to "Explore More Options" rather than "Continue to Cancellation":



103.    If the user (6) clicks "Continue to Cancellation," they are presented with a pop-up that itself requires two additional "clicks" – the user must (7) "Tell [Mindvalley] Why You're Leaving" and (8) check a box confirming that they understand that canceling will deprive them of access to "premium features and my progress after my current billing period ends." Until the user completes both of these tasks, the Cancel Subscription button is grayed-out, inactive, and unusable, while a "Nevermind, I'm Staying"[19] button is active, and highlighted to draw the user's attention. This pop-up is reproduced on the following page.

---

[19] Clicking on the "Nevermind, I'm Staying" button returns the user to the "Billing & Subscriptions" page, forcing the user to repeat over half the process if they wish to cancel.



104.    Only if the user selects both checkboxes are they finally presented with a "Cancel Subscription" button that, when (9a) clicked by the user, finally cancels their subscription:



105.    Mindvalley's nine-step process for cancellation is specifically and intentionally designed to thwart cancellations and refund requests—a "roach motel" dark pattern—that prevents customers from canceling autorenewal. This violates the ARL because it is not cost-effective, timely, or easy-to-use. Cal. Bus. & Prof. Code § 17602(c).

**H.    Mindvalley's Notice of Upcoming Renewals Violates the ARL.**

106.    Under the ARL, Mindvalley must provide notice of an upcoming autorenewal to users with an initial term of one year or longer "at least 15 days and not more than 45 days before the automatic renewal offer or continuous service offer renews." *Id.* at § 17602(b)(2). That notice must "clearly and conspicuously" include all of the following: (1) that the automatic renewal or continuous service will automatically renew unless the consumer cancels; (2) the length and any additional terms of the renewal period; (3) the amount or range of costs the consumer will be charged and the frequency of those charges; (4) one or more methods by which a consumer can cancel the automatic renewal or continuous service; (5) include either a link that directs the consumer to the cancellation process, or another reasonably accessible electronic method that directs the consumer to the cancellation process if no link exists; and (6) contact information for the business. *Id.* §§ 17602(a)(8), 17602(b)(2).

107.    During the time that Plaintiffs were Mindvalley customers and during the class period defined herein, *see infra* ¶¶ 144, 147, counsel's investigation shows that Mindvalley may have failed to send consumers a compliant notice of upcoming renewals, including, upon information and belief, by failing to send any notice whatsoever.

108.    For any notice of upcoming renewal that was sent to customers, those notices violate the ARL. Portions of a representative exemplar notice email are reproduced on the following pages (descriptions of courses or upcoming events are omitted):

**Mindvalley**

*You're receiving this email as a Mindvalley Member*

Hi 

Just a heads up that your Mindvalley Membership will soon be automatically renewed at your regular subscription rate. There's nothing you need to do, just make sure your card is updated so you don't lose your access.

With the Mindvalley membership, you will continue to have uninterrupted access to your life transformation platform: including all the new content and upgrades we're releasing in the coming weeks and months.

This includes:

## 1. The amazing new Quests you can soon take



CLASS ACTION COMPLAINT

up, and the programs and events you can join right now.

**Choose your next transformation**



**Be Extraordinary,**

Mindvalley team

---

Access all the benefits of your Mindvalley Membership:

View your Membership Guide here

**www.mindvalley.com/welcome**

Follow Mindvalley on:

      

Download the Mindvalley App:

 

Need help? Visit **Support Center** or **User Forum**

Sent with ♥ from Mindvalley

14525 SW Millikan Way #31545 Beaverton, OR 97005-2343

Unsubscribe or manage subscriptions | Privacy Policy

109.    This email violates the ARL in several respects. Of the requirements imposed by the ARL, the only one the email includes is contact information for Mindvalley. It fails to include that the automatic renewal or continuous service will automatically renew unless the consumer cancels, the length and any additional terms of the renewal period, the amount the consumer will be charged, one or

43

more methods by which a consumer can cancel the automatic renewal, or a link or otherwise reasonably accessible electronic method that directs the consumer to the cancellation process. *See* Cal. Bus. & Prof. Code § 17602(a)(8), (b)(2). Indeed, the "Unsubscribe or manage subscriptions" link (which is not clearly and conspicuously disclosed) merely allows the user to unsubscribe from receiving certain Mindvalley emails.

**I.     Mindvalley's Long History of Injurious Billing and Cancellation Practices.**

110.    Mindvalley's actions have harmed consumers throughout California and beyond, resulting in legions of consumers voicing their discontent online. Below is merely a small sampling of negative reviews left by subscribers regarding Mindvalley's unscrupulous practices:



**Do not give your money to this company**

Do not give your money to this company, or if you do beware. They have a 15-Day trial period where you pay $399 to sign up for an annual membership. I had reviewed their material and cancelled on day 13 and they sent me a "your subscription has been cancelled" email. Then I had been waiting for the charges to be reversed but they never were. Then about a week later, I contacted Customer Support....get this...they said, "Well, there's another location on the website you need to go to cancel your trial subscription." I sent them a copy of the email they sent me and they said, "I'm sorry, you are beyond the 15-day cancellation period and do the tax reason and some other BS, we can't refund your money. This company has deceptive sales practices and is not honorable. I suggest you be careful who you put your money with.



**Charged me after cancellation of membership**

This guys are horrible..there app doesn't work properly. I had cancelled my membership months before the due date and they still debited my account and now refuse to <mark>refund</mark> my money. After writing to them they cancelled my membership. On the app it is showing cancelled twice and still not refunding money. This is ridiculous

⭐️☆☆☆☆

**Unauthorised credit card transactions**

Mind Valley have made an unauthorised charge to my credit card. I have no subscription or any agreement with mind valley for them to make a charge. I contacted them through their "support" link and they declined to make a refund. This makes their action blatant theft and not accidental error. Their advertised intentions to help people are at complete odds with their action of theft. I need the money back to buy food.

time I realised was after the window had expired. No help from customer service. A scam.

 ✓ Verified

**I've been trying to unsubscribe which...**

I've been trying to unsubscribe which seems virtually impossible. You don't get an option to when you want to change the settings of your subscription. Such a spamming business...



**Scammy auto renewal practise.**

They sent me a link to cancel renewal, which never worked. Then they went ahead and charged the renewal. When I contacted them, on the day they charged, they basically replied "too bad the link didn't work, but we won't ==refund== you either way. Scammy practise.



**Mindvalley is fooling you on purpose**

Vishen is not a badass. He is a shifty sales guy. His business model is to auto renew your membership. You don't notice and when you do you have payed 300 dollars a year for two years without even using the content. Mindvalley is in it for the money. Your money. If they had been in the business to help people they wouldn't have earned their money on fooling people to buy products that they do not want. Do yoga and qigong instead. It's practically free. Instead of having a former engineer tell you how to hold an energy ball for hundreds of dollars



**Watch out from subscription and...**

Watch out from subscription and renewals. The customer experience is horrible!
The idea of Mindvalley is nice. I signed up hoping I'll use it more. I didn't hence didn't even occur to me to ==renew==. To my surprise I get an email that I was charged $300 what??
I was sure I can just reach out because they can see I never used the system and was just charged today another $300. Sure enough, like the other reviews here say, they tell you "there is nothing we can do to refund this". Now I do get that if someone comes weeks or months later they cant refund but I contacted them within hours of the renewal that I didn't agree to. This company is probably going under and holding on to people that didn't realize they were on auto ==renew==. Triple check and I would unsubscribe if I was you reading this. You can always decide to subscribe again.

45



### I had a horrible experience with...

I had a horrible experience with mindvalley. they charged me for a new subscription without authorization. the customer service is horrible. I have not received anything that stated they would renew. I never checked any auto-renew box and you can only communicate through whatsapp. I believe that is illegal. I saw that there are at least 100 complaints through the better business bureau. Anyone else has done anything about this?



### Greedy

Had the subscription for a year and didn't realize it was going to renew. When I saw the charge I asked them to cancel and refund the renewal. They already had $299 for the first year which they could well see was barely used, only in the beginning. No refund. Very disappointing for people who are supposedly promoting mindfulness and wellbeing. I see now what promotes their wellbeing.



### Fraudulent billing practices and ZERO phone support

Be very careful dealing with this company. Their material is highly questionable and they extend your membership for $299 automatically and refuse to cancel it even if you try to do it on the same day the membership is renewed. I foolishly subcribed to their app, barely used it, did not know that it was on auto renew and got stuck with another year of worthless non-cancelable membership. Credit card dispute is ongoing. This screams FRAUD. Totally dishonest and horrible customer service. Can't speak with anyone on the phone. Communication is through email only with 2 days lag time. Beware and stay away.

### BEWARE! Dishonest & No Customer Care

I signed up a year ago, not realizing that the membership auto-renewed. Today I received a receipt for another subscription. I contacted customer service immediately saying that I want to cancel and be refunded. I was told auto renew is not refundable and I should have cancelled when I was notified that the membership was renewing. I was NOT notified. The agent told me he would transfer me and to stay on the chat. No one got back to me. For a platform marketed about spirituality and personal growth, the lack of care for their customers is extremely distasteful



**Got charged with the auto-renewal**

Got charged with the auto-renewal. There is no button on the site to turn off auto-<mark>renew</mark>. Their customer service is AI (in training) that does not help but refers you to their site. Cancelled membership, got charged for a whole year. No refund, canceled within 15 days.

**J.     Mindvalley's Scheme Injured Ms. Jones.**

111.    Ms. Jones paid $299.00 for Mindvalley's Coaching Mastery program on or around May 29, 2020 (the "May 2020 Purchase").

112.    Ms. Jones decided she did not want to continue with Mindvalley after her program ended.

113.    Nonetheless, on or about May 29, 2021, Mindvalley converted Ms. Jones's May 2020 Purchase into an automatically renewing subscription without authorization and unlawfully charged her $595.00 through her PayPal account. Ms. Jones noticed the charge and immediately contacted Mindvalley to request a refund of this unlawful charge. In this instance, Mindvalley refunded Ms. Jones and represented to her via email that her subscription had been canceled and that no further charges would be made to her account. As it turned out, while Mindvalley refunded Ms. Jones, Mindvalley did not deactivate her automatically renewing subscription.

114.    Despite Mindvalley's refund and representation that Ms. Jones's subscription had been canceled, on or about July 30, 2021, Mindvalley unlawfully charged Ms. Jones $499.00 without authorization through her PayPal account. Ms. Jones did not notice this improper charge, which was buried among the hundreds of promotional emails Mindvalley sends its clients every year.

115.    Having received her refund and believing she had successfully canceled her unauthorized subscription, Ms. Jones purchased a separate Mindvalley membership on or about October 26, 2021, to access a different coaching class (the "October 2021 Purchase"). Because Mindvalley had admitted its error regarding its unauthorized autorenewal of the May 2020 Purchase, and because Mindvalley did not clearly and conspicuously disclose that the October 2021 Purchase would automatically renew, Ms.

Jones believed that she was making a one-time, fixed-term purchase for a one-year Mindvalley membership.

116.    Then, on or about July 29, 2022, Mindvalley improperly renewed the subscription from Ms. Jones's May 2020 Purchase (which Mindvalley had said was canceled in May 2021) and unlawfully charged her $499.00 without authorization through her PayPal account. Ms. Jones did not notice this improper charge.

117.    Then, on or about October 26, 2022, Mindvalley improperly rolled Ms. Jones's October 2021 Purchase into an automatically renewing subscription and unlawfully charged her $399.00 without authorization through her PayPal account.

118.    Ms. Jones noticed the October 2022 charge and, on or about October 27, 2022, contacted Mindvalley to request a refund and confirm that any automatically renewing subscription pertaining to the October 2021 Purchase was canceled. Mindvalley refused to refund Ms. Jones's money and did not cancel her subscription.

119.    Then, on or about July 29, 2023, Mindvalley again unlawfully charged Ms. Jones $499.00 for the unauthorized, automatically renewing subscription relating to the May 2020 Purchase. Ms. Jones did not notice this charge at the time.

120.    In or around September 2023, Ms. Jones attempted to cancel the unlawful subscription Mindvalley had imposed pertaining to the October 2022 Purchase through Mindvalley's website. She thought she completed the cancellation process successfully. But, on or around October 26, 2023, Mindvalley again charged Ms. Jones $399.00 without authorization through her PayPal account. Believing she had already canceled successfully, Ms. Jones did not notice the charge at the time.

121.    On July 29, 2024, Mindvalley again unlawfully charged Ms. Jones $499.00 through her PayPal account for the unauthorized, automatically renewing subscription relating to Ms. Jones's May 2020 Purchase.

122.    Finally, on or about April 21, 2025, unable to cancel either subscription through Mindvalley's website, Ms. Jones canceled her autopayment to Mindvalley through PayPal.

123.    Ms. Jones was injured when Mindvalley improperly converted the May 2020 Purchase and October 2021 Purchase into unauthorized, automatically renewing subscriptions, and charged her $499.00 in July of 2021, 2022, 2023, and 2024; and charged her $399.00 in October of 2022, 2023, and 2024. All told, Mindvalley unlawfully charged Ms. Jones approximately $3,193 and has not refunded the money.

124.    Ms. Jones was also injured by Mindvalley's subscription practices because, had she known the truth about Mindvalley's intentionally misleading subscription practices, she would not have purchased a Mindvalley course or membership.

125.    Ms. Jones intends to purchase products and services in the future for herself from online wellness and self-help platforms, including Mindvalley, as long as she can gain some confidence in Mindvalley's representations about its products and services and subscription practices. Moreover, Mindvalley still has Ms. Jones's payment information and could use it to process unauthorized payments in the future.

**K.    Mindvalley's Scheme Injured Ms. Weiss.**

126.    On or about May 9, 2025, Ms. Weiss purchased a one-year membership with Mindvalley for $299.

127.    Ms. Weiss made this purchase with the understanding that Mindvalley would honor its promise to provide a refund if she "cancel[ed] her membership within 15 days."

128.    Dissatisfied with Mindvalley's programming, Ms. Weiss canceled her membership on May 21, 2025—within the promised 15-day refund window.

129.    Mindvalley did not refund Plaintiff's $299 purchase.

130.    On or about June 11, 2025, Ms. Weiss spoke with Mindvalley's customer service to inquire as to the status of her refund and explained that she had canceled her purchase with Mindvalley

within the 15-day window, noting that Mindvalley had promised to refund her if she canceled within 15 days.

131.    Despite this communication, Mindvalley still refused to provide a refund, stating that "[t]o proceed with your request, please ensure that you cancel your order and initiate the refund within 15 days from the purchase date. If you only cancel it, the refund process will not be completed." *Id.*

132.    On June 24, 2025, Ms. Weiss submitted a dispute with her credit card company, challenging Mindvalley's unlawful withholding of her $299 payment. The next day, Ms. Weiss received a provisional credit to her credit card of $299, pending investigation by her credit card company.

133.    On or about August 6, 2025, Ms. Weiss's credit card company confirmed that the "dispute has been resolved in your favor" and made permanent the $299 credit to her account.

134.    Ms. Weiss was injured when Mindvalley failed to refund its $299 charge to Ms. Weiss's credit card after Ms. Weiss canceled her Mindvalley membership during the 15-day "risk-free" refund period.

135.    Mindvalley wrongfully deprived Ms. Weiss of those funds from May 21, 2025 until August 6, 2025. From May 21, 2025 to June 25, 2025, Ms. Weiss was unable to use those funds. From June 25, 2025, to August 6, 2025, Ms. Weiss was deprived of certainty that she would be able to maintain hold of those funds, pending resolution of the dispute she submitted to her credit card company.

136.    Ms. Weiss was damaged by the lost time value of her funds between May 21, 2025 and June 25, 2025.

137.    Ms. Weiss was further injured by Mindvalley's subscription practices because, had she known the truth about Mindvalley's intentionally misleading subscription practices, she would not have purchased a Mindvalley membership.

138.    Moreover, Ms. Weiss was injured because she had to expend substantial time and energy to recover her funds, which Mindvalley unlawfully withheld.

139.    Ms. Weiss intends to purchase products and services in the future for herself from online wellness and self-help platforms, including Mindvalley, as long as she can gain some confidence in Mindvalley's representations about its products and services and subscription practices. Moreover,

Mindvalley still has Ms. Weiss's payment information and could use it to process unauthorized payments in the future.

### **RULE 9(B) ALLEGATIONS**

140.    To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

141.    **WHO**:  Mindvalley sells services to consumers in California through a deceptive and unlawful subscription scheme by making the material misrepresentations and omissions alleged in detail above in violation of California consumer protection statutes and the common law, including with respect to Mindvalley's refund policy, automatic renewal policy, and cancellation process, leaving many consumers who sign up for a Mindvalley service paying for subscriptions that they do not want.

142.    **WHAT**:

- **Mindvalley misrepresented its refund policy.** Mindvalley promises consumers a "100% Risk-Free" 15-day trial period, during which they can secure a refund by "cancel[ing] with one click." In reality, cancellation does not secure a refund. To get their money back, the consumer must separately request a refund in addition to canceling—a material condition never disclosed during the enrollment process. Even if consumers figure out that they must affirmatively request a refund, making that request requires navigating a multi-step, confusing maze of windows, menus, and pop-ups with built-in "dark pattern" obstacles designed to prevent users from making their request successfully.

- **Mindvalley falsely conflated cancellation with requesting a refund.** In its marketing and enrollment pages, Mindvalley repeatedly conflates "refund" and "cancellation," misleading consumers into believing that a timely cancellation automatically triggers a refund. Instead, Mindvalley treats "cancellation" as merely turning off autorenewal, while withholding funds unless the user separately pursues the refund process.

- **Mindvalley fails to disclose the required automatic renewal terms.** Mindvalley's payment page and enrollment banners do not clearly and conspicuously disclose that a Mindvalley membership will automatically renew until canceled; provide a description of how a consumer can cancel; make clear that recurring charges will be imposed automatically; or state the length of the automatic renewal term (or that it will be continuous). Moreover, Mindvalley's payment page does not clearly and conspicuously disclose the price at which the membership will automatically renew and does not provide a clear or conspicuous link to Mindvalley's Terms & Conditions.

51

- **What little information Mindvalley did disclose was designed to be hidden from the consumer.** Where Mindvalley does provide limited disclosures, they are displayed in small, low-contrast text, intentionally bypassed by "jump links," or obscured by brightly colored graphics, banners, and calls to action that deliberately draw the consumer's attention elsewhere. These design choices intentionally hide important terms from consumers and deprive them of the ability to provide affirmative consent.

- **Mindvalley deliberately obstructed users' efforts to cancel.** Mindvalley buries its cancellation mechanism deep within its account portal, requiring users to navigate multiple menus to find it. Even when consumers do find the cancellation mechanism, they are presented with pop-ups and misleading screens that discourage cancellation through misleading prompts and extra steps. This is a classic "roach motel" dark pattern design: easy to get in, but hard to get out.

- **Mindvalley issued post-purchase acknowledgment emails that omitted the automatic renewal offer terms and information on cancellation.** Mindvalley's post-purchase emails omit the automatic renewal offer terms required under the ARL and provide no description of how to cancel.

- **Mindvalley fails to provide adequate notice of upcoming renewals.** On information and belief, Mindvalley did not send any notice whatsoever of upcoming renewals during part of the class period. For those notices that were sent, Mindvalley failed to include that subscriptions are continuing until canceled, the length and any additional terms of the renewal period, the amount customers will be charged for the renewal, one or more methods by which customers can cancel renewal, or a link or otherwise accessible method that directs customers to the cancellation process.

143.    **WHERE**: Mindvalley's deceptive and unlawful subscription scheme is conducted through its website, mobile/tablet/desktop applications, and electronic communications with customers.

144.    **WHEN**: Mindvalley has been engaging in its deceptive and unlawful subscription scheme for years, and the scheme is ongoing. For a specific example, Mindvalley used its deceptive and unlawful subscription scheme when Plaintiffs enrolled in Mindvalley offerings in May 2020, October 2021, and May 2025, through Mindvalley's acknowledgment emails sent to Plaintiffs, Mindvalley's renewals of Ms. Jones's accounts in May 2021, July 2022, October 2022, July 2023, October 2023, July 2024, and October 2024, through Mindvalley's refusal to refund Ms. Weiss in May–June 2025, and Plaintiff Jones's unsuccessful attempt to cancel her Mindvalley subscription in September 2023 and thereafter. Information as to precisely how long Mindvalley's deceptive practices have been taking place

is exclusively in the possession of Mindvalley. However, publicly available records reviewed by Plaintiffs' counsel show that consumers began reporting injuries from Mindvalley's deceptive and unlawful practices at least as early as 2021.

145. **WHY**: Mindvalley uses its deceptive and unlawful subscription scheme to trap its customers into paying for Mindvalley subscriptions. As a direct result of this scheme, Mindvalley has successfully reaped tens of millions in unlawful charges at the expense of unsuspecting customers.

146. **HOW**: Mindvalley conducts its deceptive and unlawful subscription scheme by making the material misrepresentations and omissions in violation of California consumer protection law and the common law alleged in detail above.

## CLASS ACTION ALLEGATIONS

147. Plaintiffs bring this action on their own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in California (including customers of companies Mindvalley acts as a successor to) who were automatically enrolled into and charged for at least one month of a Mindvalley subscription at any time from the applicable statute of limitations period to the date of judgment (the "Class").

148. Plaintiff Weiss also brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in California (including customers of companies Mindvalley acts as a successor to) who canceled a Mindvalley subscription within 15 days of purchase but were not issued a refund at any time from the applicable statute of limitations period to the date of judgment (the "Trial Subclass").

149. As alleged throughout this Complaint, the Class and Trial Subclass claims all derive directly from a single course of conduct by Mindvalley. Mindvalley has engaged in uniform and standardized conduct toward the Class and Trial Subclass and this case is about the responsibility of Mindvalley, at law and in equity, for its knowledge and conduct in deceiving its customers. Mindvalley's conduct did not meaningfully differ among individual Class Members in their degree of care or candor, its actions or inactions, or in its false and misleading statements or omissions. The objective facts on these subjects are the same for all Class Members.

150.    Excluded from the Class are: Mindvalley; any parent, subsidiary, or affiliate of Mindvalley; any entity in which Mindvalley has or had a controlling interest, or which Mindvalley otherwise controls or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Mindvalley. Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

151.    Plaintiffs reserve the right, as might be necessary or appropriate, to modify or amend the definition of the Class or Trial Subclass and/or add Subclasses, when Plaintiffs file their motion for class certification.

152.    Plaintiffs do not know the exact size of the Class since such information is in the exclusive control of Mindvalley. Plaintiffs believe, however, that the Class encompasses thousands of consumers whose identities can be readily ascertained from Mindvalley's records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

153.    The Class is ascertainable because its members can be readily identified using data and information kept by Mindvalley in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each Class Member in compliance with all applicable federal rules.

154.    Plaintiffs are adequate class representatives. Plaintiffs' claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiffs and the other members of the Class were subject to the same or similar conduct engineered by Mindvalley. Further, Plaintiffs and members of the Class sustained substantially the same injuries and damages arising out of Mindvalley's conduct.

155.    Plaintiffs will fairly and adequately protect the interests of all Class Members. Plaintiffs have retained competent and experienced class action attorneys to represent their interests and those of the Class.

156.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a.  Whether Mindvalley's conduct violates the ARL;

b.  Whether Mindvalley's conduct violates the applicable California consumer protection statutes;

c.  Whether Mindvalley's conduct violates the applicable common law doctrines;

d.  Whether Mindvalley was unjustly enriched as a result of its conduct;

e.  Whether Class Members have been injured by Mindvalley's conduct;

f.  Whether, and to what extent, equitable relief should be imposed on Mindvalley to prevent it from continuing its unlawful practices; and

g.  The extent of class-wide injury and the measure of damages for those injuries.

157.    A class action is superior to all other available methods for resolving this controversy because (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Mindvalley's conduct; (3) Mindvalley has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

158.    Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

a.  Whether Mindvalley's conduct violates the ARL;

b.  Whether Mindvalley's conduct violates the applicable California consumer protection statutes;

c.  Whether Mindvalley's conduct violates the applicable common law doctrines;

d.  Whether Mindvalley was unjustly enriched as a result of its conduct;

e.  Whether Class Members have been injured by Mindvalley's conduct; and

f.  Whether, and to what extent, equitable relief should be imposed on Mindvalley to prevent it from continuing its unlawful practices.

159.    Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

## COUNT I

### CALIFORNIA FALSE ADVERTISING LAW

160. Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

161. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

162. The FAL authorizes a private right of action for a violation of the ARL. *See Arnold v. Hearst Magazine Media, Inc.*, No. 19 Civ. 1969, 2021 WL 488343, at *6 (S.D. Cal. Feb. 10, 2021) ("A consumer who has been harmed by a violation of the ARL may bring a claim pursuant to other consumer protection statutes, including the FAL, CLRA, and UCL.").

163. The acts, omissions, nondisclosures, and misleading statements by Mindvalley detailed herein were contrary to the provisions of the False Advertising Law, Cal. Bus. & Prof. Code § 17500 and constitute violations of the UCL for that reason as well.

164. These same acts, omissions, nondisclosures, and misleading statements violated Section 17602 of the Cal. Bus. & Prof. Code (the ARL), as alleged in detail above.

165. Mindvalley knew or reasonably should have known that its violations were misleading to reasonable consumers.

166. Plaintiffs relied upon Mindvalley's misleading representations and omissions, as detailed above. Mindvalley's misrepresentations were a substantial factor in Plaintiffs' purchase decision. If Plaintiffs had known about Mindvalley's deceptive subscription scheme, they would not have purchased Mindvalley memberships.

167. Because Mindvalley's misrepresentations and omissions were material, class-wide reliance may be inferred. These misrepresentations and omissions are material because a reasonable consumer would consider them when deciding whether to buy a Mindvalley membership. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("That one would have behaved differently can be presumed, or at least inferred, when the omission is material.") (citation omitted).

168. As a result of Mindvalley's violations of the FAL, Plaintiffs suffered an injury in fact and lost money or property, or were deprived of access to money or property for a period of time.

169. As a result of Mindvalley's violations of the FAL, the Class suffered an injury in fact and lost money or property, or were deprived of access to money or property for a period of time.

**COUNT II**

**CALIFORNIA UNFAIR COMPETITION LAW—UNLAWFUL BUSINESS PRACTICES**

170.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

171.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

172.    Cal. Bus. & Prof. Code § 17200 *et seq.* (the "Unfair Competition Law" or "UCL") prohibits acts of "unfair competition," including any unlawful, fraudulent or unfair business acts or practices as well as any acts contrary to the requirements of Cal. Bus. & Prof. Code § 17500.

173.    Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable.

174.    Mindvalley committed unlawful business practices under the UCL because it imposed charges without complying with all applicable requirements of Cal. Bus. & Prof. Code §§ 17600 *et seq.*, as alleged above.

175.    As a result of Mindvalley's unlawful business practices, Plaintiffs and the Class suffered an injury in fact and lost money or property, or were deprived of access to money or property for a period of time.

176.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class are entitled to an order: (1) requiring Mindvalley to make restitution to Plaintiffs and the Class; (2) enjoining Mindvalley from charging Plaintiffs' and Class Members' credit cards, debit cards, and/or third party payment accounts until such time as Mindvalley obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms and meets all other legal requirements; and (3) enjoining Mindvalley from making automatic renewal or continuous service offers in the State of California that do not comply with the California Automatic Renewal Law.

**COUNT III**

**CALIFORNIA UNFAIR COMPETITION LAW–UNFAIR BUSINESS PRACTICES**

177.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

178.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

179.    The Unfair Competition Law prohibits acts of "unfair competition," including any unlawful, fraudulent or unfair business acts or practices.

180.    California courts have adopted differing tests for determining whether a business act or practice is "unfair" under the UCL.  Mindvalley's practices as alleged above were and are "unfair" and therefore violative of the UCL, under any and all of these tests.  Mindvalley's practices have resulted in substantial injury to consumers that was not outweighed by any countervailing benefits to consumers or to competition and was not reasonably avoidable by the consumers themselves.  Alternatively, Mindvalley's practices offended an established public policy and/or were immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.  Alternatively, Mindvalley's practices were contrary to a public policy "tethered" to a specific constitutional, statutory or regulatory provision.

181.    As a result of Mindvalley's unlawful, unfair, and fraudulent business practices, Plaintiffs suffered an injury in fact and lost money or property, or were deprived of access to money or property for a period of time.

182.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class are entitled to an order: (1) requiring Mindvalley to make restitution to Plaintiffs and the Class; (2) enjoining Mindvalley from charging Plaintiffs' and Class members' credit cards, debit cards, and/or third party payment accounts until such time as Mindvalley obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms and meets all other legal requirements; and (3) enjoining Mindvalley from making automatic renewal or continuous service offers in the State of California that do not comply with California Automatic Renewal Law.

## COUNT IV

### CALIFORNIA UNFAIR COMPETITION LAW–FRAUDULENT PRACTICES

183.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

184.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

185.    The Unfair Competition Law prohibits acts of "unfair competition," including any unlawful, fraudulent or unfair business acts or practices as well as any acts contrary to the requirements of Cal. Bus. & Prof. Code § 17500.

186.    Mindvalley's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public, and thus constituted fraudulent business practices in violation of the UCL.

187.    Plaintiffs relied upon Mindvalley's misleading acts, omissions, nondisclosures, and statements, as detailed above.

188.    As detailed above, because those acts, omissions, nondisclosures, and statements were material, reliance by the Class can be inferred.

189.    As a result of Mindvalley's unlawful and unfair business practices, Plaintiffs suffered an injury in fact and lost money or property, or were deprived of access to money or property for a period of time.

190.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class are entitled to an order: (1) requiring Mindvalley to make restitution to Plaintiffs and the Class; (2) enjoining Mindvalley from charging Plaintiffs' and Class members' credit cards, debit cards, and/or third party payment accounts until such time as Mindvalley obtains the consumer's affirmative consent to an agreement that contains clear and conspicuous disclosures of all automatic renewal or continuous service offer terms and meets all other legal requirements; and (3) enjoining Mindvalley from making automatic renewal or continuous service offers in the State of California that do not comply with California Automatic Renewal Law.

### COUNT V

### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT[20]

191.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

192.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

193.    The California Consumers Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1770(a)(14), prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

---

[20] Pursuant to Cal. Civ. Code § 1782, Plaintiffs shall send a notice and demand letter by registered mail to Mindvalley.

194.     As alleged in detail above, Mindvalley violated and continues to violate Cal. Civ. Code § 1770, subds. (a)(5), (a)(9), (a)(14) and (a)(16) by, *inter alia*, representing that Mindvalley's goods and services have certain characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law; representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; and representing that Mindvalley has the right to charge Plaintiffs and the Class's payment methods without first making the statutorily required disclosures under California's Automatic Renewal Law and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of California's Automatic Renewal Law.  Mindvalley does not have the legal right to charge for these subscriptions because at all relevant times, it was not in compliance with California's Automatic Renewal Law.

195.     Plaintiffs and the Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d) in that Plaintiffs and members of the Class were charged by Mindvalley in connection with transactions involving goods or services sought or acquired for personal, family, or household purposes.

196.     Mindvalley's automatically renewing subscriptions constitute "goods or services" within the meaning of Cal. Civ. Code § 1761.

197.     Plaintiffs have standing to pursue these claims because they suffered injury in fact and a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiffs would not have enrolled in Mindvalley's subscription had they known the truth about Mindvalley's intentionally misleading subscription practices.

198.     The charges imposed by Mindvalley, purportedly in exchange for automatically renewing subscriptions, on Plaintiffs and Class Members are "transactions" within the meaning of Cal. Civ. Code § 1761(e).

199.     As a direct and proximate result of Mindvalley's violations of the CLRA, Plaintiffs and the Class were wrongfully charged fees for Mindvalley's automatically renewing subscriptions.

200.     Plaintiffs and the Class reasonably relied on Mindvalley's deceptive acts, omissions, nondisclosures, and statements, as detailed above.

201.    Mindvalley's conduct alleged herein was undertaken knowingly, willfully, and with oppression, fraud, and/or malice, within the meaning of Cal. Civ. Code § 3294(c).

202.    Accordingly, Plaintiffs and members of the Class seek an injunction prohibiting Mindvalley from engaging in the unlawful practices alleged herein. If Mindvalley fails to rectify or agree to rectify the unlawful acts detailed above and fails to give notice to all affected consumers within 30 days of written notice pursuant to § 1782 of the CLRA, Plaintiffs will amend this Complaint to add claims for compensatory damages, and restitution of any ill-gotten gains due to Mindvalley's acts and practices, as well as any other remedies the Court may deem appropriate.

## <u>COUNT VI</u>

### CONVERSION

203.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

204.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

205.    Plaintiffs and the Class own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

206.    Defendant substantially interfered with Plaintiffs and the Class's possession of this money by knowingly and intentionally making unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for Mindvalley subscriptions.

207.    Plaintiffs and the Class never consented to Defendant's taking of this money from their bank accounts, internet payment accounts, and/or credit cards.

208.    Defendant wrongfully retained dominion over this monetary property and/or the time value of the monetary property.

209.    Plaintiffs and the Class have been damaged by Defendant's wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendant's records.

210.    By reason of the foregoing, Defendant is liable to Plaintiffs and the Class for conversion in an amount to be proved at trial.

<strong>COUNT VII</strong>

<strong>RESTITUTION</strong>

211. Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

212. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

213. As a result of its unjust conduct, Defendant has been unjustly enriched.

214. As a result of Defendant's ARL violations, Mindvalley products and services "shall for all purposes be deemed an unconditional gift to the consumer," Cal. Bus. & Prof. Code § 17603, thus giving rise to a claim for restitution.

215. By reason of Defendant's wrongful conduct, Defendant has benefited from receipt and maintenance of improper funds, and under principles of equity and good conscience, Defendant should not be permitted to keep this money.

216. As a result of Defendant's conduct it would be unjust and/or inequitable for Defendant to retain the benefits of its conduct without restitution to Plaintiffs and the Class. Accordingly, Defendant must account to Plaintiffs and the Class for Defendant's unjust enrichment.

<strong>COUNT VIII</strong>

<strong>MONEY HAD AND RECEIVED</strong>

217. Plaintiffs incorporate by reference all preceding and subsequent paragraphs.

218. Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class.

219. Defendant received money from Plaintiffs and from each member of the Class.

220. The monies belong to Plaintiffs and each member of the Class.

221. Defendant has not returned the money.

222. Plaintiffs, on behalf of themselves and the members of the Class, seek the return of the money in an amount to be proved at trial.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiffs respectfully request that the Court:

(a) Issue an order certifying the Class defined above, appointing the Plaintiffs as Class representatives, and designating The Long Law Firm, PLLC and Wittels McInturff Palikovic as Class Counsel;

CLASS ACTION COMPLAINT

(b)     Find that Defendant has committed the violations of law alleged herein;

(c)     Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(d)     Enter an order granting all appropriate relief including injunctive relief on behalf of the Class under the applicable laws;

(e)     Render an award of compensatory damages of at least $100,000,000, the exact amount of which is to be determined at trial;

(f)     Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the deceptive and unlawful practices alleged herein;

(g)     Declare that Defendant has committed the violations of law alleged herein;

(h)     Render an award of punitive damages;

(i)     Enter judgment including interest, reasonable attorneys' fees, costs, and expenses; and

(j)     Grant all such other relief as the Court deems appropriate.

Dated:  October 6, 2025

Sacramento, California

THE LONG LAW FIRM, PLLC

s/ James Austin Long
James Austin Long
1401 21st Street, Ste. 5801
Sacramento, CA 95811
Tel:    315-991-8000
jlong@long.law

WITTELS MCINTURFF PALIKOVIC
Daniel Kieselstein*
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Tel:    (914) 775-8862
djk@wittelslaw.com

Co-Counsel for Plaintiffs and the Proposed Class

*Pro hac vice application forthcoming

CLASS ACTION COMPLAINT